```
                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
                              HOUSTON DIVISION


PARTNERS LENDING AUTO GROUP,        §
LLC d/b/a AUTO FINANCIAL GROUP,     §
DEDE MURCER-MOFFETT, and            §
RICHARD EPLEY,                      §
                                    §
              Plaintiffs,           §
                                    §
v.                                  §       CIVIL ACTION NO. H-10-1450
                                    §
LEEDOM FINANCIAL SERVICES,          §
LLC, LEEDOM & ASSOCIATES, LLC,      §
CHRIS LEEDOM, and LEEDOM            §
MANAGEMENT GROUP, INC.,             §
                                    §
              Defendants.           §
```

## MEMORANDUM OPINION AND ORDER

Partners Lending Auto Group, LLC, Dede Murcer-Moffett, and Richard Epley bring this action against Leedom Financial Services, LLC, Leedom & Associates, LLC, Chris Leedom, and Leedom Management Group, Inc., alleging breach of contract concerning a settlement agreement between the parties. Plaintiffs also seek a declaratory judgment that the defendants' allegedly late delivery of a structured settlement payment permits plaintiffs to reinstate arbitration between the parties. Defendants have counterclaimed, also alleging breach of contract and seeking a declaratory judgment. Pending before the court are Defendants' Motion for Summary Judgment (Docket Entry No. 4) and Plaintiffs' Cross-Motion for Summary Judgment (Docket Entry No. 21). For the reasons

explained below, the court will grant the defendants' motion and deny plaintiffs' cross-motion.

## I. Factual and Procedural Background

This action arises out of a protracted dispute concerning a contract between some of the parties to split profits from an auto financing business. This dispute, which began in 2008, involved separate lawsuits in Florida and Texas as well as an arbitration in Texas. The parties settled all of their claims in a Settlement Agreement and Mutual Release ("the Agreement") that they signed on February 15, 2010.[1]

### A. The Agreement

The Agreement requires the defendants to make payments to the plaintiffs as follows:

> 1. Leedom will pay to AFG the sum of Four Hundred Thousand Dollars ($400,000) as full and final settlement of all outstanding claims. Leedom will cause a wire transfer in the amount of Two Hundred Fifty Thousand Dollars ($250,000) to be made as set forth below within 24 hours after receiving a completely executed Settlement Agreement. The remaining sum of One Hundred Fifty Thousand Dollars ($150,000) will be paid at the rate of Thirty Seven Thousand Five Hundred Dollars ($37,500) per month over four (4) months commencing on March 15, 2010.[2]

The Agreement thus provides for an initial payment by the defendants of $250,000, followed by four monthly payments of

---

[1] Settlement Agreement and Mutual Release, Exhibit 1 to Defendants' Motion for Summary Judgment, Docket Entry No. 4.

[2] Id. ¶ 1.

$37,500. The Agreement specifies that the initial payment must be wired within twenty-four hours of execution, but does not specify a means by which the defendants must make the subsequent payments. Nor does the Agreement specify a date upon which the subsequent payments must be sent or received.

The Agreement makes clear that it is intended to resolve all outstanding disputes between the parties:

> 3. Immediately upon receipt of the final settlement funds, counsel for each of the respective plaintiffs in the abovementioned actions shall file with the Clerk of the appropriate court a Notice of Settlement and Dismissal With Prejudice.
>
> 4. The Parties do hereby . . . release, acquit and forever discharge each other . . . from any and all claims, debts, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation of every nature, character and description, past, present and future, known or unknown, vested or contingent, which the undersigned now own or hold, or have at any time heretofore owned or held, or which may hereafter accrue on account of or in any way growing out of the abovementioned litigation, other than as set forth in this agreement. Each party covenants not to sue each other for claims covered by this release, other than for breach of this agreement.
>
> 5. It is understood and agreed that this settlement is the compromise of all disputed claims . . .
>
> . . .
>
> 12. The Parties acknowledge that any contract(s) between them (other than this one) shall hereafter be null and void.[3]

Regarding the consequences of failing to make the payments or paying late, the Agreement states:

---

[3] <u>Id.</u> ¶¶ 3-5, 12.

> 13. The Parties agree that all lawsuits and/or arbitrations shall be abated until such time as either all payments are made hereunder, or a payment is missed. In the event a payment is missed or late, the arbitration shall be reinstated, and a new arbitration date shall be set not more than 60 days from the date of the missed payment. In the event the initial $250,000 wire transfer is not made, this agreement shall be null and void, and the arbitration (and any other lawsuits) shall proceed as planned.[4]

The Agreement also provides that "time is of the essence with regard to all payments required to be made hereunder."[5] The Agreement does not specify the circumstances under which a payment will be considered "late."

## B.  The Disputed Payment

All parties agree that defendants wired $250,000 to the plaintiffs' attorney, Richard Daly, within twenty-four hours of the execution of the agreement.[6] Plaintiffs do not dispute that they received the full amount of the first payment on time. The present dispute centers on the second payment.

Chris Leedom provides affidavit testimony that he "personally approved the wire transfer of the first installment payment on Monday, March 15, 2010."[7] The affidavit continues, "as a result of the approval being tendered after the Federal wire deadline of 2pm,

---

[4] Id. ¶ 13.

[5] Id. ¶ 14.

[6] Reply Affidavit of Christopher Leedom, Docket Entry No. 6, ¶ 8.

[7] Id. ¶ 12.

the wire apparently was queued for delivery on March 16th."[8] Leedom states that "opposing Counsel's bank accepted the wire and confirmed at 8:17am CST on Tuesday, March 16, 2010."[9] The parties have produced an e-mail from Synovus Bank to Leedom confirming an outgoing wire of $37,500 to Daly's bank account at 9:18 a.m. (presumably EST) on March 16, 2010.[10]

Daly took the position that the payment was late, thereby triggering the clause in ¶ 13 of the Agreement stating that "[i]n the event a payment is missed or late, the arbitration shall be reinstated." Later in the day on March 16 Daly sent an e-mail to the AAA manager who had handled the prior arbitration, stating:

> The terms of the private agreement reached between the parties, which are referenced below, have not been met. We are therefore respectfully giving notice that the arbitration is to be reinstated at once and a new arbitration date is to be set within 60 days from yesterday.[11]

On March 17, 2010, Daly sent a letter to the defendants stating:

> As you know, the first $37,500 payment was not made timely. Please know that my clients do not waive any rights they have, and hereby reject the tender of such funds. Pursuant to the terms of the settlement agreement

---

[8]Id. ¶ 13.

[9]Id. ¶ 15.

[10]Amegy Bank Wire Transfer Confirmation, Exhibit 2 to Plaintiffs' Response to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Plaintiffs' Motion"), Docket Entry No. 21.

[11]E-mail from Richard Daly to Gilbert Camarena, March 16, 2010, Exhibit 4 to Plaintiffs' Motion, Docket Entry No. 21, p. 25.

      between the parties, the arbitration is to be reinstated
      and a hearing date should be set within 60 days.[12]

Enclosed with the letter was a check to the defendants for $37,500 with a memo reading "Rejection of Settlement Tender."[13]

On April 19, 2010, plaintiffs filed this action in the 125th Judicial District Court for Harris County, Texas.[14] On April 28, 2010, defendants removed the action on the basis of diversity jurisdiction (Docket Entry No. 1). On May 3, 2010, defendants filed a Motion for Summary Judgment (Docket Entry No. 4). On May 5, 2010, defendants filed a motion to stay the arbitration that plaintiffs have attempted to reinstate (Docket Entry No. 8). On May 13, 2010, Magistrate Judge Nancy Johnson granted defendants' Motion for Emergency Stay of Arbitration (Docket Entry No. 14), staying the arbitration proceeding until May 21, 2010 (Docket Entry No. 15). On May 17, 2010, plaintiffs filed a Response to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment (Docket Entry No. 21).

## II.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law

---

[12]Letter from Richard Daly to Debra Dawn, March 17, 2010, Exhibit 3 to Plaintiffs' Motion, Docket Entry No. 21.

[13]Id.

[14]Plaintiffs' First Amended Petition, Exhibit 1 to Leedom Management Group Inc.'s Notice of Removal, Docket Entry No. 1.

entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S.Ct. at 2553-2554). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S.Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but

only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

### III. Analysis

Plaintiffs argue that defendants breached the Agreement by refusing to return to arbitration after the allegedly late second payment. They seek a declaratory judgment that defendants' failure to pay the first $37,500 payment by midnight on March 15, 2010, permitted plaintiffs to reinstate the arbitration.

Defendants argue that the second payment was not late, and therefore that plaintiffs breached the Agreement by attempting to compel the defendants to resume arbitration. They seek a declaratory judgment that because the payment was initiated on March 15, 2010, it satisfied the requirements of the Agreement.

The parties do not dispute the material facts of the action; it is undisputed that defendants initiated a wire transfer on May 15, 2010, and that it was not received until May 16, 2010. What is in dispute is the legal consequences of those facts. Summary judgment is therefore appropriate.

**A. Breach of Contract**

1. Applicable Law

While federal law establishes the standards for entry of summary judgment, in a diversity case the court looks to Texas law and its choice of law principles in determining what state's law to apply. Erie Railroad Co. v. Tompkins, 58 S.Ct. 817 (1938); General

-8-

Accident Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd., 288 F.3d 651, 653 (5th Cir. 2002). Texas law gives effect to choice of law clauses regarding construction of a contract. Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 727 (5th Cir. 2003) (citing In re J.D. Edwards World Solutions Co., 87 S.W.3d 546, 549 (Tex. 2002)).

The Agreement contains a choice-of-law provision that states, "This agreement shall be governed by Texas law, and any enforcement thereof shall occur in Harris County, Texas."[15] Both parties agree that Texas law governs the dispute. The court will therefore apply Texas law.

Under Texas law, the court's duty when construing written contracts is to ascertain the intentions of the parties as expressed in the written instrument. See Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). Texas courts discern intent from the agreement itself, and the agreement must be enforced as written. See Wells Fargo Bank, Minn., N.A. v. North Cent. Plaza I, L.L.P., 194 S.W.3d 723, 726 (Tex. App. -- Dallas 2006, pet. denied). Texas law favors an interpretation that affords some consequence to each part of the agreement so that none of the provisions is rendered meaningless. Id. If the agreement can be given a certain and definite legal meaning, it is not ambiguous, and a court may construe it as a matter of law. See Coker, 650 S.W.2d at 393.

---

[15]Settlement Agreement and Mutual Release, Exhibit 1 to Defendants' Motion for Summary Judgment, Docket Entry No. 4, ¶ 15.

2. Analysis

The central question is whether the second payment was late under the terms of the Agreement. The court concludes that it was not. All that the Agreement says about the timing of the second and subsequent payments is that they "will be paid at the rate of Thirty Seven Thousand Five Hundred Dollars ($37,500) per month over four (4) months commencing on March 15, 2010."[16] Thus, all the Agreement states is that the payments will commence on March 15. It does not specify the means of payment, or any deadline by which the payments must be sent or received. The contract does not specify under what circumstances a payment will be deemed late.

Courts may infer omitted terms in order to accomplish a contract's intended purpose. See HECI Expl. Co. v. Neel, 982 S.W.2d 881, 888-89 (Tex. 1998). If the parties do not fix a time for performance, a reasonable time can be inferred. Cytogenix, Inc. v. Waldroff, 213 S.W.3d 479, 486 (Tex. App. -- Houston [1st Dist.] 2006, pet. denied).

The most reasonable reading of the payment terms in the Agreement is that the second payment should be sent by March 15, 2010, and should be received within a reasonable time thereafter. For example, sending a check in the mail on March 15 that arrived a few days later would meet the contract terms. Authorizing a wire transfer on March 15 that arrives the next morning falls within any

---

[16] Id. ¶ 1.

reasonable reading of the contract terms. Interpreting the contract to require that the funds be received by midnight on March 15 is an unreasonable reading of the terms because the parties could easily have specified such terms had that been their intent. The parties did include specific terms for the first payment, which shows that they knew how to do so when desired. Furthermore, interpreting the Agreement as requiring the parties to go back to arbitration if the second payment was received eight hours after a deadline that is not even specified in the contract would fly in the face of the contract's intended purpose, which is to provide final resolution of all claims between the parties.

Plaintiffs argue that the March 15 deadline must be strictly enforced because the Agreement states that "time is of the essence."[17] This argument might have merit if the Agreement stated a March 15 deadline for receiving the payment, but it does not. Plaintiffs also argue that their position is supported by Deep Nines, Inc. v. McAfee, Inc., 246 S.W.3d 842 (Tex. App. -- Dallas, 2008), in which the Dallas Court of Appeals held that a party breached a settlement agreement by delivering a check with insufficient funds on the last day of a cure period. The differences between the facts in Deep Nines and in the present action underscore the weakness of the plaintiffs' argument. The settlement agreement at issue in Deep Nines stated that the

---

[17] Id. ¶ 14.

payments had to be received by the recipient by 5:00 p.m. on the sixth day of each month, and that if they were not received the intended recipient was to provide written notice to the other party, who then had a three-day cure period in which to deliver the payment. Id. at 844. The Agreement in this action contains no such specific deadline terms. The breaching party in Deep Nines delivered the first payment late, and for the second payment delivered an uncertified check on the last day of the cure period after having received written notice from the recipient. Id. at 845. The check was dishonored for insufficient funds. Id. The defendants in this action, by contrast, initiated payment by wire transfer on the required date, and the money was received by the plaintiffs' bank on the following day. Deep Nines provides clear examples both of how to draft a contract with definite deadlines and how a party can fail to meet them. The current action provides examples of neither.

The court concludes that as a matter of law the second payment was not late. Accordingly, the defendants did not breach the Agreement by refusing to return to arbitration. The plaintiffs, however, did breach the provision of the Agreement that states, "The Parties agree that all lawsuits and/or arbitrations shall be abated until such time as either all payments are made hereunder, or a payment is missed."[18] Since no payment was missed or late, the

---

[18] Id. ¶ 13.

plaintiffs had no legal right to reinstate the arbitration, and it was a breach of the Agreement to do so. Accordingly, defendants are entitled to summary judgment on their breach of contract claim.

**B.   Declaratory Judgment**

The court may enter a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201(a). The court concludes as a matter of law that because the March 15, 2010, payment was initiated on March 15 and was received within a reasonable time thereafter, the payment satisfied the requirements of the Agreement. Consequently, there was no breach of the Agreement by the defendants, and there is no basis for reinstating the arbitration. The court's final judgment will contain a declaratory judgment as to these findings.

The defendants also seek declaratory judgment on the following statements:

> a.   The Settlement Agreement effected a release of all claims existing at the time it was executed, and the only remaining claims between the Parties are those that might arise out of the breach of the Settlement Agreement.
>
> b.   As a result of the Settlement Agreement all prior contracts and agreements between the Parties are void, and the only contractual relationship between them is the Settlement Agreement.[19]

These statements are supported by the following provisions of the Agreement:

---

[19]Defendants' Original Answer and Counterclaim, Docket Entry No. 3, pp. 3-4.

-13-

> 4. The Parties do hereby . . . release, acquit and forever discharge each other . . . from any and all claims, debts, actions, causes of action . . . Each party covenants not to sue each other for claims covered by this release, other than for breach of this agreement.
>
> 5. It is understood and agreed that this settlement is the compromise of all disputed claims . . .
>
> . . .
>
> 12. The Parties acknowledge that any contract(s) between them (other than this one) shall hereafter be null and void.[20]

The problem is that the Agreement says that "[i]n the event a payment is missed or late, the arbitration shall be reinstated."[21] The Agreement does not clearly state what claims would then be available in the arbitration. The same provision states, "In the event the initial $250,000 wire transfer is not made, this agreement shall be null and void, and the arbitration (and any other lawsuits) shall proceed as planned."[22] The reasonable inference to draw from this clause is that if the initial $250,000 payment is made -- which it was -- then the remainder of the Agreement remains valid, in which case the arbitration that is reinstated should only properly apply to claims of breach of the Agreement itself. This interpretation may be inconsistent, however, with the use of the term "reinstated," which suggests that

---

[20]Settlement Agreement and Mutual Release, Exhibit 1 to Defendants' Motion for Summary Judgment, Docket Entry No. 4, ¶¶ 4, 5, 12.

[21]Id. ¶ 13.

[22]Id.

the claims considered in arbitration could continue as before. The Agreement is not a model of clarity.

Although the text of the Agreement tends to support the defendants' proposed statements, the court declines to enter a declaratory judgment endorsing them because such relief is not necessary at this time. The most efficient resolution of this dispute for all parties concerned is for the parties to continue abiding by the Agreement they signed in February. Defendants assert that they have sent all payments to date required by the Agreement. Once defendants have sent the final payment and it has been received by plaintiffs within a reasonable time, there will be no doubt about the rights and obligations of the parties -- both will be obligated to "file with the Clerk of the appropriate court a Notice of Settlement and Dismissal with Prejudice."[23] The court is confident that the parties will resolve their disputes as they agreed to in the Agreement.

## IV. Attorney's Fees

Defendants seek attorney's fees under TEX. CIV. PRAC. & REM. CODE § 38.001(8), which provides, "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract." As discussed above, the court has concluded that the plaintiffs breached the contract by

---

[23] Id. ¶ 3.

reinstating arbitration when it had agreed under the contract not to do so.  Therefore, defendants are entitled to the attorney's fees and court costs they have expended in pursuing the breach of contract claim.

A party seeking attorney's fees in federal court bears the burden of producing adequate documentation of the hours spent litigating the claims.  See League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Independent School District, 119 F.3d 1228, 1232-33 (5th Cir. 1997).  Specifically, the moving party must detail the hours expended in a manner that is sufficient for the court to confirm that the party has met its burden.  Id. Because defendants have not presented any evidence of attorney's fees and costs related to this breach of contract action, the court cannot make an award of attorney's fees in this Memorandum Opinion and Order or enter a final judgment.

## V.  Conclusion and Order

For the reasons explained above, the court concludes that the defendants' second payment under the Settlement Agreement was not late as a matter of law.  Therefore, Defendants' Motion for Summary Judgment (Docket Entry No. 4) is **GRANTED**, and Plaintiffs' Cross-Motion for Summary Judgment (Docket Entry No. 21) is **DENIED**.

Defendants' request for attorney's fees and costs under TEX. CIV. PRAC. & REM. CODE § 38.001(8), made in Defendants' Original Answer and Counterclaim (Docket Entry No. 3), is **GRANTED**.  If the

parties are unable to agree on the amount of defendants' attorney's fees and costs, defendants are **ORDERED** to file a motion and supporting affidavit to establish the attorney's fees and costs they seek. Plaintiffs may respond within ten days after the filing of defendants' motion.

The stay entered by Judge Johnson on May 13, 2010, will remain in effect pending the entry of a final judgment. At that time the court will enter an order permanently enjoining the arbitration. The July 16, 2010, initial pretrial and scheduling conference is **CANCELED**.

**SIGNED** at Houston, Texas, on this the 21st day of May, 2010.

```
                          _____
                                  SIM LAKE
                          UNITED STATES DISTRICT JUDGE
```